[No. H004085. Sixth Dist. May 4, 1988.]

JOSEPH GALLO, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY,
Respondent;
KIM SHERRY, Real Party in Interest.

 

**COUNSEL**

David J. Stock, Stephen P. McCarthy and Mitchell & Stock for Petitioner.

No appearance for Respondent.

Devereaux Rendler and Frank A. Jelinch for Real Party in Interest.

**OPINION**

**CAPACCIOLI, J.—** ▮ This petition for a writ of mandate or prohibition raises the issue whether a recent statute of limitations, Code of Civil Procedure section 340.3,[1] which extends the time to sue for damages due to commission of a felony offense until one year after judgment of conviction of the crime, applies retroactively to revive personal injury causes that were already barred when the new statute became effective. We conclude that it does not, hence will issue the writ of mandate to direct the respondent court to sustain petitioner's demurrer to that part of real party in interest's complaint which is barred by limitations.

Plaintiff and real party in interest Kim Sherry sued defendant and petitioner Joseph Gallo for assault and battery, false imprisonment, intentional infliction of emotional distress, negligence, premises liability, and conversion. She filed her complaint June 22, 1987. Gallo demurred on the basis of section 340, subdivision (3) (one year) for the personal injury torts, and section 338, subdivision 3 (three years) for the conversion.

Sherry alleged that over a period of several months Gallo beat and sexually abused her and took her property by force and intimidation. These acts occurred at the latest in April 1982.

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise stated.

On November 13, 1986, Gallo was convicted of multiple felony charges based on the same acts Sherry alleged in her complaint, including assault, criminal attempt to dissuade a witness from testifying, extortion, and false imprisonment. Sherry argued that the convictions of extortion arose from the alleged tortious conversions, and the convictions of forcible offenses similarly arose from the alleged personal injuries.

Sherry contends that section 340.3 has extended the period of limitations within which she must file her claims. Section 340.3, an urgency statute which took effect on September 20, 1983, was enacted in implementation of Proposition 8 (the Victims' Bill of Rights, Cal. Const., art. I, § 28). It provides that the period of limitations for an action for damages based on commission of a felony offense shall be at least one year after judgment of conviction of the crime. Sherry filed her complaint within a year of pronouncement of Gallo's convictions. Holding the action timely within section 340.3, the trial court overruled Gallo's demurrer. Gallo seeks a writ of mandate to dismiss the action.

## DISCUSSION

On the date that section 340.3 became effective, the one-year period of limitations had already expired as to Sherry's personal injury and related allegations which are subject to the one-year statute. (The last alleged act occurred in April 1982 and the statute became effective in September 1983.) However, the three-year period for the conversions had not yet expired. When the complaint was filed June 22, 1987, all relevant periods of limitations had elapsed, unless extended by section 340.3.

■ California law is unsettled regarding whether the Legislature *may* make a statute of limitations retroactive in the sense that it revives a claim which is already time-barred. (See, e.g., *Douglas Aircraft Co.* v. *Cranston* (1962) 58 Cal.2d 462, 465 [24 Cal.Rptr. 851, 374 P.2d 819, 98 A.L.R.2d 298]; *Mudd* v. *McColgan* (1947) 30 Cal.2d 463, 467-468 [183 P.2d 10]; *Singer Co.* v. *County of Kings* (1975) 46 Cal.App.3d 852, 866-867 [121 Cal.Rptr. 398].) However, as a rule of statutory construction, it is established that an enlargement of limitations operates prospectively unless the statute expressly provides otherwise. (*Mudd, supra,* and *Douglas Aircraft, supra;* see also *Carr* v. *State of California* (1976) 58 Cal.App.3d 139, 147 [129 Cal.Rptr. 730]; 3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 332, pp. 361-363.) The reason for this rule is a judicial perception of unfairness in reviving a cause after the prospective defendant has assumed its expiration and has conducted his affairs accordingly. A parallel doctrine, based on similar fairness considerations, applies in construing criminal statutes of limitations; the period to prosecute may only be extended before it expires

and not, to paraphrase Judge Learned Hand, after the chase is over. (See *Falter* v. *United States* (2d Cir. 1928) 23 F.2d 420, 425-426: "Certainly it is one thing to revive a prosecution already dead, and another to give it a longer lease of life. The question turns upon how much violence is done to our instinctive feelings of justice and fair play. For the state to assure a man that he has become safe from its pursuit, and thereafter to withdraw its assurance, seems to most of us unfair and dishonest. But, while the chase is on, it does not shock us to have it extended beyond the time first set, or, if it does, the stake forgives it.")

■ Section 340.3 contains no express language saying whether or not it applies retroactively. Under general principles of California law, discussed above, we must construe it not to apply retroactively to revive already barred causes of action, unless some other principle, such as special rules for applying Proposition 8 (Cal. Const., art I, § 28), changes the general rule.

In general, the courts have not retroactively applied the various statutes enacted to implement Proposition 8. (*People* v. *Smith* (1983) 34 Cal.3d 251, 261-262 [193 Cal.Rptr. 692, 667 P.2d 149]; *People* v. *Forster* (1985) 169 Cal.App.3d 519, 525 [215 Cal.Rptr. 218].) For example, one decision states that if Proposition 8 imposed a duty on a government entity to respond in tort damages, that duty was not retroactive. (*Rodriguez* v. *Inglewood Unified School Dist.* (1986) 186 Cal.App.3d 707, 721-722 [230 Cal.Rptr. 823] [considering whether the "safe schools" provision of Prop. 8 confers liability on a school district to respond in damages for an assault on a student].)

The only decision to date which has applied any statute implementing Proposition 8 retroactively is *Wood* v. *McGovern* (1985) 167 Cal.App.3d 772 [213 Cal.Rptr. 498]. That decision considered section 1021.4 which authorizes an award of attorneys fees in a personal injury action arising out of the commission of a felony. That statute, like section 340.3 here, was enacted as an urgency measure in September 1983 in implementation of Proposition 8. (See *Wood, supra,* fn. 5, at p. 774.) The *Wood* court held that because section 1021.4 is a statute providing for attorneys fees, it is procedural and applies retroactively. The court based its ruling on the solidly established body of precedent which holds generally that an attorneys' fees statute applies to pending legal proceedings, even when the statute becomes effective after the occurrence of the underlying event. (See *Wood* v. *McGovern, supra,* at p. 775, and decisions there cited.) Attorneys' fees statutes create no new causes of action and affect only the amount of damages. (*Ibid.*) They are viewed as ancillary to the underlying causes. Accordingly such statutes are routinely applied retroactively. The *Wood* court also deter-

mined that such retroactive application of section 1021.4 in the civil action did not have the effect of an impermissible ex post facto punishment.

Here, however, the underlying general body of precedent regarding changes in periods of limitations does not favor retrospectivity but instead, as stated above, presumes that periods of limitations once expired may not be revived except by express statutory language to that effect.

However, there is some decisional uncertainty in applicable California law. Cases in two areas—(1) elimination of the claims filing requirement in inverse condemnation cases and, (2) postponement of the accrual date of causes arising from asbestos-related injuries—have applied extensions of limitations retroactively. The leading asbestos decision is *Nelson* v. *Flintkote Co.* (1985) 172 Cal.App.3d 727 [218 Cal.Rptr. 562]. That case dealt with section 340.2, effective January 1, 1980, a special statute of limitations for asbestos-related injuries, postponing accrual of the cause of action until the later of one year after discovery of the injury or disablement. In *Nelson,* the plaintiff was not yet disabled when he filed suit. He discovered his injury in 1976, more than one year before enactment of the statute, and did not file his complaint until 1981: within one year of enactment of the statute; before disability; but more than one year after discovery of the injury. The court said the cause was not barred. Specific language in the enacting legislation applied the statute to causes which "have not otherwise been extinguished by operation of law." (*Nelson, supra,* at p. 730.) The court in *Nelson* reasoned that extinguishment in this sense does not mean expiration of a limitations period but rather means a court has decided that the matter is barred. The court also presented extensive public policy considerations why the statute should be liberally construed to preserve the rights of asbestos victims, who suffer a slow-acting, insidious process, making application of a one-year statute unfair. The decision concluded that the statute applied to all claims not yet adjudicated before the statutory effective date.

*Nelson* described its holding as not extending a limitations period, but rather, postponing its commencement. "Since there had been no extinguishment, there is no problem of an impermissible retroactive revival of a barred cause of action impairing defendants' vested rights. Indeed, we note that section 340.2 does not even really involve an extension of the prior statute's one-year period of limitation. Rather, it adopts a different standard for accrual, postponing the commencement of the running of the one-year limitation." (*Nelson, supra,* 172 Cal.App.3d at pp. 732-733.) This is an argument that only a lawyer could love; it rests on semantics rather than on reason.

*Nelson* follows other decisions similarly applying the special statute of limitations for asbestosis. (*Puckett* v. *Johns-Manville Corp.* (1985) 169

Cal.App.3d 1010 [215 Cal.Rptr. 726]; *Blakey* v. *Superior Court* (1984) 153 Cal.App.3d 101 [200 Cal.Rptr. 52].)

It may have been significant to the result in *Nelson* that the judiciary rather than the Legislature created the doctrine that a cause of action for asbestos-related injury accrues upon discovery of the injury. (See *Velasquez* v. *Fibreboard Paper Products Corp.* (1979) 97 Cal.App.3d 881, 888 [159 Cal.Rptr. 113].) Theoretically nothing prevented other Courts of Appeal from reaching different results. An appellate court could have independently reached the same conclusion ultimately reached by the Legislature, that accrual does not occur until the later of discovery or disablement. Therefore there was some basis for the *Nelson* court's conclusion that an asbestos victim's cause of action could not be accurately considered to be time-barred until a court had decided the issue as to him. The situation is different here; we deal with a statutory period of limitations, a clear-cut statewide rule which, in the understanding of most reasonable men, extinguishes the cause after the statutory period has elapsed.

The claim-filing cases are *City of Los Angeles* v. *Superior Court* (1977) 73 Cal.App.3d 509 [142 Cal.Rptr. 292], and *Wedding* v. *People* ex rel. *Dept. of Transportation* (1979) 88 Cal.App.3d 719 [152 Cal.Rptr. 181], both retroactively applying Government Code section 905.1 which eliminated the claim-filing requirement in inverse condemnation cases. These decisions hold that a claim-filing requirement is procedural and its elimination operates retroactively. The action is not "barred" when the period to file a claim expires because no judicial determination has yet been made as to the date of the taking in inverse condemnation, which is the crucial event triggering the period to file. Indeed, the uncertainty of that date was a reason why the Legislature decided to eliminate the claim-filing requirement altogether, as the cases cited above point out.

*Nelson* cited the theoretical rationale of these claim-filing cases in arriving at its conclusion that a cause is not extinguished until it has been judicially adjudicated. However, there are important distinguishing factors between claim-filing requirements and statutes of limitations. Decisions dealing with claim-filing requirements have been far more liberal than limitations cases in permitting exceptions to the rules of timeliness. For example, the decision in *Gutierrez* v. *Mofid* (1985) 39 Cal.3d 892 [218 Cal.Rptr. 313, 705 P.2d 886], holding that the "excusable neglect" which would justify relief from the claim statute did not suffice to toll the medical malpractice statute of limitations, had this to say: "However, the claim-statute relief provisions addressed in *Ebersol* [*Ebersol* v. *Cowan* (1983) 35 Cal.3d 427 (197 Cal.Rptr. 601, 673 P.2d 271)] are fundamentally distinct from the statute of limitations at issue here. The 100-day government claim requirement is an obsta-

cle *in addition to the normal limitations period* applicable to the tort alleged. Because the claim period is so short, and because lay persons may have no idea of its existence, it looms as a trap for the unwary. Realizing this, the Legislature has devised a remedial scheme for relief from this harsh and technical deadline where justice requires. . . . [¶] By contrast, the one-year limitations period for medical malpractice . . . begins to run upon discovery, actual or constructive, of an 'injury,' that is, an abnormal condition and its negligent cause. The period expires inexorably one year later, and the Legislature has made no provision for relief on general grounds of 'excusable neglect' to file suit on time." (*Gutierrez* v. *Mofid, supra,* at pp. 901-902.)

Claim-filing periods are typically short. On the other hand, a statute of limitations traditionally plays a valid role in laying stale causes to rest and providing finality and repose without need for any court adjudication. (See, e.g., *Telegraphers* v. *Ry. Express Agency* (1944) 321 U.S. 342 [88 L.Ed. 788, 64 S.Ct. 582]; *Shain* v. *Sresovich* (1894) 104 Cal. 402, 406 [38 P. 51]; *Scherer* v. *Mark* (1976) 64 Cal.App.3d 834, 844 [135 Cal.Rptr. 90]; see discussion in 3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 309, pp. 338-339.) The reasoning of a decision like *Nelson* undercuts those considerations and rests basically on a desire to avoid time limits at all costs, because the court perceives them as unfair.

An additional distinction between the above-cited claim-filing cases and the present case is that the date of accrual of a personal injury cause is normally not as uncertain as that of an inverse condemnation cause. There is no indication here that any difficulty in ascertaining the accrual date of the crime victim's cause of action played a role in motivating enactment of the statute we consider, section 340.3.

In addition to relying on decisions such as *Nelson* and *Wedding, supra,* Sherry also cites the recent decision in *Newman* v. *Newman* (1987) 196 Cal.App.3d 255 [241 Cal.Rptr. 712]. However, that decision is not apposite. There an ex-wife shot her husband, later pleaded not guilty by reason of insanity and was committed. The lawsuit was filed more than one year after the injury but within nine months of the enactment of section 340.3. The court held that the ex-husband's cause was barred by the one-year statute. The court said that section 340.3 cannot apply to cases where the defendant pleads not guilty by reason of insanity because no conviction is possible in such cases. Aside from its refusal to apply section 340.3 across the board in favor of all conceivable crime victims, *Newman* has no relevance to this case.

Sherry argues the legislative goal in enacting section 340.3 was to provide maximum restitution to felony victims, and therefore retrospectivity must

have been intended here. The enactment of the statute as an urgency measure, she argues, also supports this interpretation. She also quotes at length from the legislative history of the bill. However, none of this material specifically addresses the question of retrospectivity.

It is a jump in logic to argue, as she does, that just because the statute was intended to lengthen the applicable statute of limitations for injuries inflicted by felons, therefore the Legislature also intended to revive already expired causes. These are different matters. Further, the Legislature has used explicit language elsewhere when it intended a limitations period to take effect even for otherwise time-barred lawsuits; see, e.g., section 340.1, subdivision (e)(1), extending the period of limitations for child abuse within a family to, inter alia, actions "which would be barred by application of the period of limitation applicable prior to January 1, 1987." Section 340.3 contains no such express language.

■ Sherry finally argues there is no constitutional impediment to retrospective application of this statute reviving a civil cause of action. That position is probably correct. (See *Chase Securities Corp.* v. *Donaldson* (1945) 325 U.S. 304 [89 L.Ed. 1628, 65 S.Ct. 1137], discussed in Witkin *supra,* at § 332, pp. 361-363.) A potential defendant has no vested right in the sense of repose conferred by his knowledge a lawsuit against him appears to be barred. The issue is one of fairness and of statutory construction, rather than constitutional right.

■ In addition to these legal arguments, Sherry also says Gallo is estopped from raising the bar of limitations because he intimidated her into not filing the lawsuit and she was afraid to sue until after he was convicted. However, that argument is not to be found in the complaint by way of factual allegations or otherwise, nor, in her opposition to the demurrer, did Sherry request leave to amend to allege the basis of an estoppel.

■ The conversion cause of action is arguably based on acts underlying the convictions of extortion. That cause was still alive when section 340.3 was enacted, since the limitations period is three years for that tort. Accordingly the statutory extension provided by section 340.3 does apply to that cause and the complaint is timely as to those claims. ■ However, the torts subject to the one-year statute of limitations were barred before the effective date of section 340.3. The trial court should have sustained the demurrer as to those causes.

Real party in interest has been notified that a peremptory writ in the first instance could be issued here, and she has filed opposition. The peremptory writ of mandate will issue in the first instance. (Code Civ. Proc., § 1088;

*Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177-182 [203 Cal.Rptr. 626, 681 P.2d 893].)

DISPOSITION

Let a peremptory writ of mandate issue directing the respondent court to sustain petitioner's demurrer to those portions of the complaint subject to the one-year statute of limitations. Each party shall bear his or her own costs in this proceeding.

Agliano, P. J., and Brauer, J., concurred.